**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Michael Trebilcock, | ) | CASE NO. 1:05 CV 2428 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Greg Elinsky, et al., | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Third Party Defendant MCPc's Motion for

Summary Judgment (Doc. 86).  Also pending is Plaintiff's Motion for Summary Judgment on

Remaining Claims (Doc. 85).  This case involves control over a limited liability company.  For

the reasons that follow, MCPc's motion is DENIED and plaintiff's motion is GRANTED in

PART and DENIED in PART.

**FACTS**

Plaintiff, Michael Trebilcock, filed this lawsuit against defendants, Michael and Gregory

1

Elinsky, seeking, among other things, a declaratory judgment regarding the ownership of

Sagebrush Investment Group, Ltd. ("Sagebrush").  Gregory Elinsky, in turn, filed a counterclaim

as well as a third-party complaint against MCPc, Inc. ("MCPc").  Plaintiff filed an initial

summary judgment motion, which this Court granted in part and denied in part.  Plaintiff moves

for summary judgment on the remaining claims and counterclaims and MCPc also seeks

summary judgment on the third-party complaint.  The Elinskys oppose both motions.

In early 2002, Trebilcock and Michael, Gregory and David Elinsky began discussions

concerning the acquisition of certain assets of MCSi, Inc. ("MCSi").[1]  At the time, MCSi

employed Trebilcock.  David Elinsky decided not to participate in the endeavor and, as a result,

Gregory and Michael Elinsky agreed that Trebilcock should pursue discussions with MCSi.

The following month, Sagebrush was formed as a holding company designed to acquire

the assets of MCSi.  Trebilcock and the Elinskys contributed capital to Sagebrush.

At approximately the same time Sagebrush was formed, MCPc was incorporated.  On

June 28, 2002, MCPc acquired the assets of MCSi and began operating as a technology provider.

At the same time, Sagebrush acquired the majority shares of MCPc.  No operating agreement

existed for Sagebrush prior to the acquisition.  A Confidential Offering Memorandum, which

was circulated to potential MCPc investors, indicated that Trebilcock was the sole member of

Sagebrush.  Prior to the closing, Michael Elinsky informed Trebilcock's counsel that he wanted

that information changed.  In addition, potential investors received a copy of the MCPc business

plan, which does not mention either of the Elinskys.  The plan does, however, identify

---

[1]     Many of these facts are set forth in the Court's earlier summary
        judgment ruling.  As they are also relevant to the issues now
        raised, the Court restates them herein.

2

Trebilcock as the President and CEO of MCPc.  Gregory Elinsky received the plan and forwarded it on to others.

Although unclear, it appears that immediately following the acquisition of certain assets in MCSi, Michael Elinsky was employed by MCPc.  It does not appear that Gregory Elinsky (sometimes "Elinsky") held any position or was involved with the management of either MCPc or Sagebrush.  Trebilcock and Michael Elinsky disagreed regarding the authority of Trebilcock to make certain decisions.  Michael Elinsky was also concerned about the lack of an operating agreement.  He contacted an attorney to discuss the situation.  At the same time, Trebilcock and both Elinskys disagreed regarding their ownership interests and management rights in Sagebrush.  On September 26, 2002, Michael Elinsky drafted a Draft Memorandum of Understanding ("Memorandum") in an attempt to resolve these issues.  The Memorandum indicated that the economic benefits of Sagebrush would be shared in proportion to each individual's capital investment.  It further indicated that the parties would be equal voting members and managers of Sagebrush.   The Memorandum brought about a six month period of negotiations between the parties regarding these issues.  Michael Elinsky testified that Gregory Elinsky was working in the last six months of 2002 to "help resolve" the issues.  There is no indication that Gregory Elinsky had any other involvement as an employee or officer of MCPc. In January of 2003, Trebilcock fired Michael Elinsky.

On March 20, 2003, the parties entered into an agreement entitled the Sagebrush Investor Term Sheet ("Term Sheet").  Pursuant to the agreement, plaintiff "bought out" Michael Elinsky's entire ownership interest and a portion of the interest held by Gregory Elinsky.  With regard to Gregory Elinsky's interest, the Term Sheet provides as follows,

3

### I. [Gregory Elinsky's] Mebership [sic] Interest

[Gregory Elinsky's] current cash investment in Sagebrush is $900K.  As of the Effective Date [Gregory Elinsky's] membership interest in Sagebrush Investment Group LLC shall be equal to 26.203%.

> a.  In consideration [of Gregory Elinsky's] entire membership interest [Michael Trebilcock] agrees to pay the following:
>
> $600K paid to [Gregory Elinsky] within 45 days of the effective date.
>
> $300K paid in 36 equal monthly installments starting on May 1, 2003 at 8% interest.  Should [Michael Trebilcock] repay 65% of the full loan within 12 months this loan shall be interest free to [Michael Trebilcock.]
>
> b.  In exchange for monies due [Gregory Elinsky] from [Michael Trebilcock] from real estate and securities transactions in the approximate amount of $441,894 [Michael Trebilcock] agrees to transfer 26.203% membership interest in Sagebrush to [Gregory Elinsky.]

In addition, the Term Sheet required Trebilcock to pay Gregory Elinsky $121,000 within 45 days of the "effective date which unwinds the MCSi real estate transaction."  It further provided that Gregory Elinsky would obtain a seat on the Board of Directors of MCPc.  The Term Sheet, however, contained no provisions regarding the rights of Gregory Elinsky and Trebilcock to manage the affairs of Sagebrush.

The term sheet contained similar provisions with regard to the buyout of Michael Elinsky's interest, except that Trebilcock agreed to purchase Michael Elinsky's entire interest in Sagebrush.  Trebilcock paid Michael Elinsky.  Michael Elinsky admits that he no longer holds any interest in either Sagebrush or MCPc.

It is undisputed that Trebilcock failed to make any payment to Gregory Elinsky within 45 days of the effective date of the Term Sheet.  On May 19, 2003, Trebilcock sent Gregory Elinsky a check in the amount of $350,000.  This payment was 15 days late and represented less than

4

half of the amount due pursuant to the Term Sheet.  No further payments were made by Trebilcock at this time.

According to Elinsky, in approximately July of 2003, he informed Trebilcock that his performance under the Term Sheet was "unacceptable" and that he would not agree to sell his interest in Sagebrush.

According to Trebilcock, he sent a check in the amount of $690,325.40 to Elinsky on November 24, 2004.  The check was sent to Elinsky's house along with an "unrelated" holiday gift.  Elinsky claims he never received the check.  On February 14, 2005, Trebilcock's attorney sent an email to Elinsky requesting wiring instructions "in lieu" of the check purportedly tendered in November.  Elinsky refused to provide wiring instructions.

The parties' relationship continued to deteriorate throughout 2005.  In June of 2005 Gregory Elinsky sent two emails to an MCPc employee regarding the termination of Gregory's health care benefits.  That same month, Michael Elinsky sent an email to an MCPc employee indicating that  was "forced out" of the company.  Thereafter, on August 19, 2005, Elinsky distributed copies of a letter drafted by his attorney and addressed to Trebilcock's attorney.  The letter was received by MCPc shareholders and employees and was also discovered on various fax machines at MCPc.  The letter outlines the "wrongs" that Trebilcock committed, including "conspiring...to squeeze out [the Elinskys]" and "fraudulently inducing" the Elinskys to invest in MCPc.

After these communications, MCPc put a "filter" in place, which prohibits Gregory Elinsky from emailing anyone with an MCPc email account.  The emails are filtered to either the general counsel or president of MCPc.  Upon review, the emails are distributed to their intended

recipient.  All of the emails sent by Gregory Elinsky have been forwarded to the addressee.  In September of 2005, a special director's meeting was scheduled in order to address issues regarding certain MCPc loan documents.  Gregory Elinsky sent an email to the board members and MCPc's general counsel requesting that certain information regarding the loan documents be provided to him.  In the event the information could not be provided, Elinsky requested that the meeting be postponed.  Because of the email filter, Elinsky's request was not received by the board members and Elinsky did not get the information he sought.  The meeting continued as planned.

Thereafter, Trebilcock filed this lawsuit.  The amended complaint contains two claims for relief.  Count one seeks a declaratory judgment regarding the ownership and management rights in Sagebrush.  Count two is a claim for defamation.  In addition, Elinsky filed a counterclaim asserting four claims for relief.  Count one seeks a declaratory judgment regarding the ownership and management rights in Sagebrush.  Count two is a claim for fraud and misrepresentation.  Count three asserts a claim for breach of fiduciary duty.  These claims are asserted against Trebilcock.  Count four consists of a third-party claim for injunctive relief against MCPc, seeking the removal of the email filter.

This Court previously ruled that the Term Sheet is an enforceable agreement.  The Court concluded, however, that summary  judgment could not be granted at that time on the issue of satisfaction of payment.  In addition, the Court ruled that, based on the parties' submissions, summary judgment could not be granted on either Trebilcock's defamation claim or counts two and three of the counterclaim.

Trebilcock moves for  summary judgment on the issue of satisfaction of payment, as well

6

as his defamation claim.  In addition, Treibilcock argues that he is entitled to summary  judgment

on the fraud and breach of fiduciary counterclaims.  MCPc moves for summary  judgment on the

third-party complaint.  Defendants oppose the motions.

### STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is

appropriate when no genuine issues of material fact exist and the moving party is entitled to

judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v.*

*United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the

absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the

lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe

the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

**DISCUSSION**

1.    Trebilcock's motion

A.  Satisfaction of payment

Trebilcock moves for summary  judgment on the grounds that he has satisfied all payment obligations under the Term Sheet.  Trebilcock claims that by tendering the $690,325.40[2] check in November of 2004, he completed performance under the Term Sheet.  In addition, Trebilcock points out that he sought wiring instructions in order to wire the money to Elinsky after Elinsky claimed he did not receive the check.  In Trebilcock's first summary judgment motion, the Court concluded that there was insufficient evidence to conclude that, as a matter of law, Trebilcock "satisfied" his payment obligations.[3]  Subsequent to the issuance of the

---

[2]    According to Trebilcock, the amount consists of the original $550,000 principal due under the Term Sheet, plus interest at the rate of 8% from May 1, 2003, through November 24, 2004.  Also included is $50,000 for an unrelated debt.  Although Trebilcock does not offer specific evidentiary support for his calculations, Gregory Elinsky does not challenge the makeup of the check.

[3]    The Court's primary concern centered around the fact that Elinsky disputed that he received the check.  Trebilcock continues to assert that the "mailbox" rule rendered his performance complete.  This Court disagrees.  Certainly Trebilcock cannot be suggesting that in the event the check truly was lost in the mail, his performance was nonetheless complete and Elinsky is simply out of luck.

8

Court's first summary judgment opinion, Trebilcock reissued the check. Elinsky does not dispute that he received this check.

Elinsky argues that he never agreed to accept the $690,325.40 to "cure" Trebilcock's breach. According to Elinsky, the Court concluded that payment of the check did not cure the breach. In addition, Elinsky argues that he must be paid the value of his percentage share in MCPc and that the value far exceeds the amount set forth in the Term Sheet.

Upon review, the Court finds that Trebilcock's request must be denied. Trebilcock cannot dispute that he breached the Term Sheet by failing to make timely payments. Now, several years later, Trebilcock asks the Court to permit him to tender the amount due under the Term Sheet plus interest as calculated by him. According to Trebilcock, this amount is sufficient to compensate Elinsky for Trebilcock's breach and represents "all payments due and owing" under the Term Sheet. Trebilcock's argument fails based on basic contract principles alone. A party in breach of a contract must pay all damages naturally flowing from the breach. These damages are not limited to the amount owed under the contract plus interest, but also include consequential as well as incidental damages. Trebilcock asks the Court to find that Elinsky's damages are limited to the amount due under the Term Sheet and eight percent interest on the late payments, through November 24, 2004. The Court cannot say, as a matter of law, that Elinsky's damages are so limited.

That being said, Elinsky is not entitled to recover the "market value" of his interest in MCPc. The law relied on by Elinsky involves the withdrawal or termination of a member's interest in an LLC. This Court concluded that the Term Sheet is a valid and enforceable agreement. It clearly and unambiguously sets forth that Elinsky is *selling* his interest in MCPc in

9

exchange for the payments stated therein.  Certainly, parties to a contract are permitted to agree on a specific sales price of a membership interest irrespective of the precise market value the interest may have.

In all, the Court finds that Trebilcock is not entitled to the declaration he seeks regarding "satisfaction" of any and all amounts due and owing under the Term Sheet.[4]

B.  Fraud

Elinsky alleges that Trebilcock engaged in various acts of fraud concerning the formation and governance of Sagebrush and MCPc.[5]  Trebilcock moves for summary judgment on the grounds that Elinsky cannot establish that he suffered any damages as a result of the alleged fraud.  In addition, Trebilcock argues that many of the allegations of fraud were extinguished by the Term Sheet.  Trebilcock also analyzes particular reasons each allegation of fraud fails.  In response, it appears that Elinsky argues that the damage he suffered consists of the loss of the full value of his investment.  According to Elinsky, a myriad of fraudulent misstatements and omissions led him to invest in Sagebrush.  In turn, Elinsky argues that the value of his investment is much greater than the amount set forth in the Term Sheet.  Elinsky claims that summary  judgment is not appropriate because the element of "intent" often raises factual issues

---

[4]     Notably, Elinsky did not assert a claim for breach of contract, and would be precluded from doing so at this late date.  Although not opining on the issue, the Court questions whether the doctrine of *res judicata* would permit the filing of such a claim in a subsequent lawsuit.

[5]     This Court previously granted summary  judgment in favor of Trebilcock as to Elinsky's claim that he was fraudulently induced to enter the Term Sheet.  Accordingly, the sole issue remaining is whether Trebilcock engaged in fraud during the formation and initial governance of Sagebrush.

that are better left for the jury.

Upon review, the Court finds that Trebilcock is entitled to summary judgment on Elinsky's fraud claim.  To establish a claim for fraud, Elinsky must introduce evidence of each of the following elements, "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."  *State ex rel. The Illuminating Co. v. Cuyahoga County Court of Common Pleas*, 776 N.E.2d 92 (Ohio 2002) (citations omitted).

In this case, the Court agrees with Trebilcock that Elinsky fails to introduce evidence from which a reasonable juror could conclude that Elinsky suffered damages as a result of any of the alleged fraud.  The only argument Elinsky makes is that he suffered damages because he did not receive the "full value" of his investment.  This argument fails for two reasons.  First, the Term Sheet expressly sets forth the agreed upon "value" of Elinsky's interest and this Court has already concluded that Elinsky may not rescind the agreement.  Second, by claiming that his damages consist of the increased value in his investment, Elinsky is seeking to *enforce* the alleged "fraudulent" misrepresentations.  The enforcement of promises, however, is a remedy sounding in contract or quasi-contract, not fraud.   Elinsky fails to provide evidence that he suffered damages, other than those directly addressed by the express terms of the Term Sheet. Accordingly, summary judgment in favor of Trebilcock is warranted and the Court need not reach the parties' remaining arguments.

C.  Breach of fiduciary duty

In count three of the counterclaim, Elinsky alleges that Trebilcock breached his fiduciary duty in various ways.  The claim essentially mirrors the fraud claim.  Elinsky alleges that Trebilcock breached a fiduciary duty by, among other things, failing to properly inform Elinsky regarding the structure and management rights associated with Sagebrush, making unauthorized distributions and failing to provide the true value of Elinsky's investment.

Trebilcock argues that the claim fails for a number of reasons.  According to Trebilcock, most of the allegations pertain to MCPc and Elinsky owns no direct interest in that entity.  Trebilcock claims that any fiduciary duty he may owe Elinsky flows from Elinsky's role as a member of Sagebrush.  According to Trebilcock, the Ohio Revised Code imposes a heightened burden on Elinsky to demonstrate that Trebilcock caused harm to the entity.  In addition, Trebilcock argues that Elinsky suffered no damages as a result of the alleged breaches.  Trebilcock goes on to address the specifics of each allegation supporting the breach of fiduciary duty claim.

In response, Elinsky argues that he need not prove his case by clear and convincing evidence.  According to Elinsky, the Ohio Revised Code provision relied on by Trebilcock does not apply.  Elinsky argues that he must simply demonstrate that he suffered harm different in kind from other shareholders.  Elinsky also claims that Trebilcock owes him a fiduciary duty to act in the utmost good faith due to Elinsky's position as a minority member of a limited liability company.  Although Elinsky does not directly address the damages argument, he does aver that "but for" the alleged breaches, he would not have invested in Sagebrush.  At the same time, it appears that Elinsky is claiming that the value of his interest in Sagebrush vastly exceeded the

amount he was paid under the Term Sheet.  Thus, Trebilcock should pay him the difference between the value of the investment and the amount he received under the Term Sheet.

Upon review, the Court finds that Trebilcock is entitled to summary judgment on the breach of fiduciary duty claim.  Regardless of the standard of proof to be applied in this particular situation, damages is a necessary element of the claim.  *See, e.g.*, *Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988)(damages is an element of a breach of fiduciary duty claim). In support of his damages argument, Elinsky relies on two entirely inconsistent theories.  On the one hand, Elinsky claims that had he known about the management and ownership structure, he would not have contributed capital.  Elinsky, however, goes no further and fails to offer any evidence that he was harmed in a pecuniary fashion by the alleged breach of fiduciary duties. Evidence that Elinsky would not have invested "but for" the alleged breaches may meet the causation element, but Elinsky still must demonstrate damages.  He fails in this regard.  On the other hand, Elinsky claims that the value of his initial investment is far greater than the value he received under the Term Sheet.[6]  According to Elinsky, he is entitled to receive the "full value" of this investment.  As set forth above, however, the Term Sheet directly contradicts Elinsky's argument.  Regardless of the "fair value" of the investment, Elinsky agreed to relinquish a portion of his interest in the company in exchange for a particular sum.[7]  Elinsky will not be

---

[6]     Obviously, this argument directly contradicts Elinsky's claim that he was somehow damaged as a result of his initial investment.

[7]     Elinsky argues that after the Term Sheet was signed, Trebilcock had a business valuation prepared which indicated that the value of Elinsky's interest was far greater than the amount set forth in the Term Sheet.  There is no evidence, however, that Trebilcock possessed this knowledge when the parties negotiated the Term Sheet.

13

permitted to do an end-run around the Term Sheet under the guise of a breach of fiduciary duty claim.  Having failed to introduce any evidence of damages, Trebilcock is entitled to summary judgment on the breach of fiduciary duty claim.

        D.  Defamation

In count two of the complaint, Trebilcock alleges that the Elinskys defamed him by publishing various emails and a letter to third parties.  According to Trebilcock, the statements in the correspondence constitute defamation *per se*.

Under Ohio law, defamation is "a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace, or affects him adversely in his trade or business." *Sweitzer v. Outlet Communications, Inc.*, 726 N.E.2d 1084, 1088 (Ohio App. 10th Dist. 1999).  The elements of a defamation claim have been set forth as:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 611 N.E.2d 955, 962 (Ohio App. 9th Dist. 1992).

There are two types of defamation, *i.e.*, defamation *per se* and defamation *per quod*.  Whether a particular statement is defamatory *per se* is a question of law for the court.  *Wilson v. Harvey*, 842 N.E.2d 83, 88 (Ohio Ct. App. 8th Dist. 2005).  "Defamation *per se* occurs when material is defamatory on its face; defamation *per quod* occurs when material is defamatory through interpretation or innuendo."  *Godsen v. Louis*, 687 N.E.2d 481, 488 (Ohio Ct. App. 9th Dist. 1996).  The following categories of statements fall within the amibit of defamation *per se*:

(1) words that impute the charge of an indictable offense involving moral turpitude or infamous punishment;

(2) words that impute some offensive or contagious disease calculated to deprive the person of society; or

(3) words that have the tendency to injure the plaintiff is his trade or occupation;

*Williams v. Gannett Satellite Information Network, Inc.*, 834 N.E.2d 397, 400 (Ohio Ct. App. 1st Cir. 2005).  If a statement is defamatory *per se*, the plaintiff need not prove special damages.

Trebilcock moves for summary judgment on the grounds that the statements at issue amount to defamation *per se* as a matter of law.  Each piece of correspondence will be addressed in turn.

<u>The August 9, 2005 letter</u>

On August 9, 2005, an attorney representing the Elinskys sent a letter to Trebilcock's attorney regarding the parties' dispute.  Shortly thereafter, Gregory Elinsky distributed the letter to a number of MCPc board members, shareholders and at least one employee.[8]  Elinsky claims that he only intended to send the letter to MCPc board members and shareholders.  To the extent the letter was received by Bryan Sheetz, the publication was inadvertent.

The letter contains the following language,

- ...Mike Trebilcock improperly conspired with David Hildebrandt, MCPc's General Counsel and Secretary, to squeeze out Mike and Greg Elinsky;

- Daivd Hildebrandt...assisted Mike Trebilcock in making unauthorized distributions/payments from Sagebrush to MCPc.

- In the process, Mike Trebilcock fraudulently induced the Elinskys...and then

---

[8]    It appears that Trebilcock is claiming that Elinsky also sent the letter to Beth Stec.  She testified, however, that she did not receive the letter from Elinsky.

15

[held] the Elinskys' investment hostage to orchestrate an improper scheme to strip the Elinskys of their investment...

- Mike Trebilcock intentionally misled Greg Elinsky...to fraudulently induce Greg Elinsky to sign what purported to be a buyout...based on fraudulent representations....

Elinsky argues that summary judgment is not appropriate because the publication was privileged and, therefore, the second element of a defamation claim is not met.  According to Elinsky, he possessed a duty as a member of the board of directors of MCPc to inform the board and shareholders of the dispute over control of the company.  In response, Trebilcock points out that Elinsky cites no law in support of a "board privilege."  In addition, Trebilcock argues that even assuming such a privilege exists, it is undisputed that Bryan Sheetz, a non-shareholder employee, received the letter.

Upon review, the Court finds that summary judgment must be denied.  The existence of a "conditional" or qualified" privilege is well settled under Ohio law.  It may be asserted by a defendant as an affirmative defense, which protects the publication of otherwise defamatory material.  "A publication is conditionally or qualifiedly privileged where circumstances exist...which cast on [the defendant] the duty of making a communication to a certain other person...in the performance of such duty...."  *Hahn v. Kotten*, 331 N.E.2d 713, 719 (Ohio 1975).  "A qualified privilege is recognized when a commonality of interest exists between the publisher and recipient of the communication and the communication is of a kind reasonably calculated to protect or further that interest."  *Daubenmire v. Sommers*, 805 N.E.2d 571, 593 (Ohio Ct. App. 12th Dist. 2004)(finding qualified privilege exists between parents and educators).  Where the underlying facts are not in dispute, the question of whether a qualified privilege exists is for the court.  *Id*.

16

Although it appears Ohio has not spoken on the issue, at least one other jurisdiction has concluded that members of a board of directors have a qualified privilege regarding communications relevant to the functioning of the corporation.  *See, e.g., Lerwirk v. Krna*, 29 A.D.3d 1206, 1208 (N.Y. Sup. Ct. 2006) (board of directors has qualified privilege with regard to letter sent concerning mismanagement by company president).  The Court finds that communications between a member of the board of directors and other directors and shareholders concerning the state of affairs of the company are entitled to a qualified privilege.  A particular director shares common interests in the management (or mismanagement) of the corporate entity with the other directors and shareholders.  Moreover, directors bear a fiduciary duty to shareholders to convey information regarding the company.  In this case, the communication discusses the ownership and management of MCPc and Sagebrush.  In addition, it discusses potential litigation involving the company.  The Court finds that these communications fall within the qualified privilege.

That being said, a "qualified privilege is exceeded when statements are made with actual malice."  *Daubenmire*, 805 N.E.2d at 593.  In addition, a privilege may be exceeded by "excessive publication," or "excesses of language."  Robert Sack, *Sack on Defamation*, §§ 9.3.5.1, 9.3.5.2 (3d ed. 2005).  Where a qualified privilege exists, "the burden is on the plaintiff to demonstrate by clear and convincing evidence that the defamatory statements were made with actual malice."  *Daubenmire*, 805 N.E.2d at 593.  Simply showing that a particular statement is defamatory *per se* is insufficient to defeat a qualified privilege.  *Ball v. British Petroleum Oil*,

17

670 N.E.2d 289, 295 (Ohio Ct. App. 1995).[9]

Upon review, the Court finds that Trebilcock is not entitled to summary judgment on his defamation claim as it pertains to the August 9, 2005 letter.  Trebilcock makes no effort to respond to Elinsky's claim regarding privilege.  Rather, Trebilcock simply argues that the privilege does not apply to the publication of the letter to Sheetz, a non-shareholder employee.  This Court disagrees.  Elinsky testified that the publication was inadvertent.  Elinsky is protected by a qualified privilege if he reasonably believed the Sheetz was a board member or shareholder.  There exists an issue of fact in this regard.  The Court finds that inadvertent publication to one member outside of the privileged group does not, as a matter of law, constitute excessive publication sufficient to destroy the privilege.  Because Trebilcock fails to offer any evidence at all demonstrating that Elinsky was negligent in distributing the email to Sheetz, or to rebut the qualified privilege, summary judgment is not warranted.

With regard to the publication to all other individuals, however, the Court finds that Elinsky has demonstrated that the qualified privilege applies and plaintiff must demonstrate malice by clear and convincing evidence.

Having so concluded, the Court need not decide whether the communication is protected by an "absolute" privilege.  Nor is it necessary for the Court to address whether the communication is defamatory *per se* since such a showing is insufficient in and of itself to defeat

---

[9]     Absent a qualified privilege defense, malice is presumed upon a showing of defamation *per se*.  The presumption, however, does not apply to a showing that a qualified privilege has been exceeded.

18

a qualified  privilege.[10]

<u>Gregory Elinsky's emails</u>

On June 2, 2005, Elinsky sent an email to Beth Stec, MCPc's human resources manager,

containing the following relevant language,

> ...You, nor Mike Treiblcock have the proper authority to [remove health care benefits].
> You obviously are not aware of the actual ownership structure of MCPc.  Mike T. [sic]
> actions will only continue to further compound his poor judgment to date....

> This is not directed to you to be mean spirited, however in the future you should
> respectfully decline to be put in the middle of this troubled situation.  If any actions are
> taken by other executives of the company that you feel are inappropriate, you should call
> me directly.

On June 8, 2005, Elinsky sent a second email to, among others, Beth Stec.  The email

contains the following relevant language,

> ...The facts are that it is several months from that call in which trebilcock [sic] and
> hildebrandt [sic] were to obtain counsel to defend there [sic] actions of using MCPc
> funds for Trebilcock [sic] personal gain at the expense of other shareholders....

Upon review, the Court finds that summary judgment in favor of Trebilcock is not

appropriate with regard to these emails.  The first allegedly defamatory statement, *i.e.*,

Trebilcock's "poor judgment," is not a statement of fact.  Whether an individual suffers from

"poor judgment" is not subject to verification.  Similarly, the instruction to call Elinsky if "other

executives of the company" take "inappropriate actions" does not appear to be directed at

Trebilcock.  Since the email concerns Trebilcock, the reference to "other executives,"

----

[10]     In response to Trebilcock's motion, the Elinskys argue that all of
the statements in the August 9, 2005 letter are not actionable
because Trebilcock initially claimed that the statements were
"contentions."  Having concluded that summary  judgment is not
appropriate, the Court need not reach this issue.

19

necessarily implies someone different from him.  Although somewhat of a closer call, the Court

also finds that the statement concerning Trebilcock's retention of counsel to defend his action of

using MCPc funds for personal gain does not amount to defamation *per se*.  As an initial matter,

Trebilcock's motion contains virtually no analysis concerning the email.  Rather, he argues in a

conclusory fashion that the email constitutes defamation *per se*.  Moreover, it appears that at

some point Trebilcock did retain counsel regarding Elinsky's claim that Trebilcock made

unauthorized payments.  On the whole, the Court simply cannot say that the statement taken in

context amounts to defamation *per se*.

Mike Elinsky's email

On June 27, 2005, Mike Elinsky sent an email to Beth Stec.  The email was sent in

response to the termination of Mike Elinsky's health care coverage.  The email contains the

following relevant language,

> Greg and I are currently senior officers and board members of MCPc and its controlling
> shareholder Sagebrush.  The termination of my salary and nonpayment of Greg's salary
> was not properly authorized by the board nor the controlling shareholders.
>
> The controlling shareholders of MCPc have endeavored to privately resolve these types
> of inappropriate actions by certain officers of MCPc since I was forced out of the
> company and my salary terminated, unfortunately as of this writing private resolution is
> not likely.  As such the controlling shareholders of MCPc have retained legal counsel to
> resolve these and other issues.

Trebilcock claims that the references to the fact that he was "forced out" and committed

"inappropriate actions" amount to defamation *per se*.

Mike Elinsky responds that Trebilcock made no real argument regarding his email.

Instead, Mike Elinsky claims that Trebilcock's arguments are directed at the allegedly

defamatory statements made by Gregory Elinsky.  In addition, Mike Elinsky argues that the

20

statement that he was "forced out" of the company is true.  In his reply brief, Trebilcock simply argues that the statements have a tendency to injure Trebilcock in his trade or occupation.

Upon review, the Court finds that summary judgment must be denied.  As an initial matter, Trebilcock does not dispute that Mike Elinsky was terminated.  The Court finds that the statement that Mike Elinsky was "forced out" of the company cannot form the basis of a defamation claim for the simply reason that it constitutes a true statement.  Moreover, a general reference to "inappropriate actions" by "certain officers" is insufficient to form the basis of a claim for defamation *per se*.

2.      MCPc's motion

MCPc moves for summary judgment on count four of the third-party complaint, in which Elinsky alleges that he is entitled to an injunction removing the email filter placed on the email system at MCPc.  According to MCPc, the filter was put in place as a result of improper correspondence sent from Elinsky to MCPc employees.  MCPc recognizes that because Elinsky is an MCPc director, he has a broad right to access information about the company.  It argues, however, that the email filter does not hinder Elinsky's right to information.  MCPc moves for summary judgment on the grounds that Elinsky has always received the information he sought and that at no point did the email filter cause any harm.

In response, Elinsky points out that MCPc is simply incorrect.  On one occasion, Elinsky sent an email requesting information regarding MCPc loan documents, which were to be the subject of a special directors' meeting.  In addition, he requested that the meeting be postponed in the event the materials could not be made available prior to the meeting.  Because of the filter,

21

none of the board members received the email.[11]  As a result, Elinsky did not receive the

financial information and the meeting was not postponed.  General counsel for MCPc admitted

that Elinsky's request was proper and indicated that he regretted that the request did not come to

his attention sooner.

    Upon review, the Court finds that summary judgment must be denied.  The sole basis for

MCPc's motion is that the e-mail filter has *never* interfered with Elinsky's ability to obtain

information necessary to discharge his fiduciary duty as a director.   In response to MCPc's

argument, however, Elinsky introduced evidence that the filter has interfered with his ability to

collect pertinent financial information.  MCPc did not file a reply brief and, as such, these

evidentiary facts are uncontested.  As Elinsky has refuted the sole basis for MCPc's motion,

summary judgment is not appropriate.

### CONCLUSION

    For the foregoing reasons,  MCPc's motion is DENIED and  Plaintiff's Motion for

Summary Judgment on Remaining Claims is GRANTED in PART and DENIED in PART.  The

sole remaining claim in this matter requiring a jury trial is the defamation claim asserted by

plaintiff.  Also pending is Elinsky's request for injunctive relief to remove the email filter.  As

this claim is equitable in nature and because there do not appear to be questions of fact in

dispute, the parties will submit the issue to the Court on merit briefs.  Merit briefs are due on or

before July 13, 2007.  Upon review, the Court will determine whether the inability of a director

to obtain information on one occasion is sufficient to preclude MCPc from employing an email

---

[11]    All of the directors, with the exception of Elinsky, are also
       employees of MCPc.

filter.  All other claims have been resolved by the Court in its two summary judgment rulings.

IT IS SO ORDERED.




 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/25/07